THOMAS R. WOOLLEY, assignee &c.,

*v.*

EZRA A. OSBORNE, receiver &c., et al.

A landlord, by a mere oral agreement, rented a hotel to a tenant, in 1867, with a stipulation that if he should enlarge the hotel the tenant would pay him a specified additional rent, and that the tenant should also have the privilege of purchasing the premises at cost. The tenant entered and occupied the demised lands, and the landlord and tenant both made valuable additions thereto. The landlord died in 1876, and the tenant in 1879. Pending litigation in another state over the landlord's will, the defendant was appointed by this court a receiver of the premises; and a few months prior to the tenant's death, he (the tenant) made an assignment to the complainant for the benefit of his creditors. On a bill alleging these facts, and that the estate of the landlord is indebted to complainant for board &c. furnished the landlord and his

Woolley *v.* Osborne.

family, and that the accounts between the parties are complicated, and the items numerous—*Held*, (1) that this court would entertain jurisdiction of the matter; (2) that the statute of limitations, under the circumstances, was not a defence on the part of the landlord or his representatives; (3) that the cost of improvements to the premises, made by the tenant, could not be included in this accounting.

Bill for account &c. On final hearing on pleadings and proofs.

*Mr. C. Robbins,* for complainant.

*Mr. W. H. Vredenburgh,* for defendants.

THE CHANCELLOR.

The bill is filed by an assignee under the assignment act, for an account and for an injunction to stay the proceedings of a receiver appointed by this court, of the estate of the landlord (Samuel Down) of the assignor (James Jenkinson), to recover, by distress, $1,529.22, a year's rent admitted by the tenant to be due November 15th, 1878, for the premises formerly known as Jenkinson's Hotel, at the highlands of Navesink. The injunction, which was granted on the filing of the bill, appears to have been disposed of in some way, so that the proceedings in distress were carried to sale. By reason, however, of prior mortgage encumbrances on the property on which the distress was levied, nothing was realized on the claim for rent. Both the landlord and tenant are now dead. The former died October 2d, 1876 (the bill was filed January 16th, 1879), and the latter, April 1st, 1879. The defendants are the receiver, the widow and children of Down, the only child of a deceased daughter of his, and the executors of his will. The bill states that in the fall of 1867 Down bought the property, and let Jenkinson into possession of it, under an agreement (merely oral) to keep it as a hotel; that the latter was to have it for the first year free of rent, and for the subsequent years was to pay, as rent, a sum equal to seven per centum of the price, $11,846, paid by Down; that if Down should enlarge or add to the hotel,

Jenkinson was to pay, as additional rent, an amount equal to the interest on the cost of the enlargement or addition, and that Down was to convey the property to Jenkinson on receiving payment of, or security for, the amount which it had cost him, including the cost of any enlargement or addition. It also states that the hotel was enlarged in 1872, at a cost of $9,000 or $10,000, so that the rent, which before the enlargement was $829.22 per annum, became $1,529.22; that Jenkinson took possession shortly before April 1st, 1868, and occupied the property from that time forward up to the time of beginning this suit; that with a view of becoming the owner under the agreement, he, with the knowledge and consent and approval of Down, and at his request, either express or implied, made large repairs and improvements upon the property at his own trouble and expense; that he paid to Down, at different times, large sums of money, over and above the rent due, and that during the tenancy Down became indebted to him in a large amount for board, lodging and accommodation furnished him and others at his request, and for goods, wares and merchandise sold and delivered to him, and for the hire of horses and carriages &c. &c.; a bill of the particulars of his account whereof is annexed to the bill, showing a balance due him from Down's estate at the time of Down's death, October 2d, 1876, of $13,451.15. The bill further states that the account was allowed to run, and the moneys over and above the rent paid on the understanding on Jenkinson's part that the agreement for sale of the property to him would be carried out, and that the large balance due him from Down would be credited on the price he was to pay; that the executors and heirs-at-law of Down have some considerable accounts against Jenkinson, which should be settled between them and the complainant as Jenkinson's assignee; that no settlement of the accounts between Jenkinson and Down, or his estate was ever made; that the accounts are of an intricate and difficult character, and of such a nature as to be unfit for settlement and liquidation in a court of law, and that the settlement thereof in such courts would tend to produce unnecessary litigation and a multiplicity of suits, and therefore a delay of justice.

The bill also alleges that Jenkinson, after the decease of Down, made considerable repairs and improvements (at a cost of $1,251.64) on the property, which were. necessary and proper to render it fit for use; that the making of those repairs and improvements was afterwards brought to the notice of the receiver, and that they were allowed and assented to by him, of which allowance and assent a paper dated November 1st, 1878, is the proof, and the complainant submits that the cost of those repairs and improvements should enter into the account. The paper to which he refers is a written acknowledgment of indebtedness for rent for the years ending respectively April 1st, 1878, and April 1st, 1879, given by Jenkinson to the receiver (but it is dated November 15th, 1878), in which the former claimed and made a deduction of $1,251.64 from the rent, $3,058.44, for repairs made by him to the property in the two years.

As will have been seen, the suit is brought by an assignee (the assignor is now dead) against the receiver of the estate of Down, and Down's heirs and next of kin and executors. The receiver was appointed to take care of Down's property here, pending litigation in New York as to admitting his will to probate. The defendants plead the statute of limitations, and by answer deny the execution of the agreement for sale; they deny, also, that there is any indebtedness from the estate of Down to that of Jenkinson, but claim that on the other hand the latter is indebted to the former in a large sum of money. The evidence establishes the fact that Jenkinson occupied the property under the arrangement stated in the bill. The question to be decided on this hearing is whether there should be an account or not. There have been mutual dealings between Down and Jenkinson, in which credit has been given on both sides. For years Down was entitled to rent from Jenkinson, but what amount exactly does not appear, and during the whole period he was contracting debts with Jenkinson, to the payment of which the rent was applicable. They never had any settlement. The items of Jenkinson's account are very numerous. The parties to this suit are, as before stated, acting in a representative capacity. In *O'Connor* v. *Spaight, 1 Sch. & Lef. 305,* Lord Redesdale retained

jurisdiction of such a suit, under similar circumstances. See, also, *Porter* v. *Spencer*, *2 Johns. Ch. 169*. In instituting this suit recourse was had to this court by the assignee, under circumstances (in the light of the statements of the bill) justifying such resort to equity. No suit at law was pending in which the rights of the parties could be ascertained. The defendants have not demurred, but have pleaded and answered, and the parties have taken a very large amount of testimony on the subject of the account. It is proper that the account should be taken. The defendants insist that on an examination of the facts in the case, and scrutinizing the accounts, it will appear that nothing is due the complainant, and a statement purporting to be a general statement of accounts between them up to August 1st, 1868, made by Jenkinson, is much relied upon by the defendants, as showing what the state of the accounts was at that date. It evidently is not a complete statement of the accounts between them. It appears to be merely a statement of cash received ($2,706.79) by Jenkinson from Down, from December 18th, 1867, and of the expenditure of $2,696.39 thereof by him for Down for work and materials, leaving an unexpended balance of $10.40. The statement also embraces a further sum of $269.05, which Jenkinson claimed to have spent for Down for labor and materials (including certain fixtures in the hotel), and board for mechanics employed on Down's work ; to the payment of which are applied the before-mentioned balance of $10.40, and $274 cash received by Jenkinson from Down for filling ice-houses (for crediting which latter sum there Jenkinson gives special reason), leaving a balance of $15.35 due Down on that account. It includes no credit for rent, nor any charge for board. It is also urged that the before-mentioned acknowledgment of the amount due for rent for 1878 and 1879 is strong evidence, also, that nothing is due to the complainant. But that instrument contains a provision that it is to be without prejudice to claims against Down's estate for time prior to those years. Apart from these considerations, it is quite enough to say that it is no part of the duty of this court to take the account on this hearing.

In taking the account no credit is to be given to the estate of Jenkinson for any repairs or improvements put by him upon the property, whether before or after the death of Down. Although he took possession as a tenant under an agreement which fixed the rent at the amount of the interest on the cost of the property to the owner, and he expected to buy the property, he was nevertheless merely a tenant. He therefore cannot recover for any improvements put on the property, nor for any repairs. There is no evidence to charge Down's estate with the cost of either. The fact that Down was there and witnessed the making of repairs or improvements, is not enough under the circumstances to raise an implication of a promise to pay for them, or to charge his estate with their cost. Of course Down's estate is liable to pay for any work or materials done or furnished at his request; but it is not liable for any kind of repairs or improvements to the hotel property, however permanent or extensive, done or made by Jenkinson in the expectation that he would, some day, become the owner of the property, and without the order or direction of Down, or his promise, express or implied, to repay him therefor. Nor will the fact that Jenkinson, in the paper given by him to the receiver as an admission of the amount of rent due, made a deduction, and so claimed an allowance for repairs made after Down's death, in any way bind Down's estate to pay for those repairs. That paper as to that matter is merely evidence of a claim on the part of Jenkinson. It in fact and by its terms is only an admission on his part that, after deducting $1,251.64 for repairs, there is due the sum of $1,806.80 for the two years 1868 and 1869. It is the statement in the form of a due-bill of the amount which he was willing to admit he owed for the rent of those two years. The acceptance of it by the receiver under the circumstances would not bar the estate from claiming more than that balance, or bind it to allow for those repairs.

The demands are not subject to the operation of the statute of limitations. On the one hand, there are numerous charges up to August 27th, 1878, and while on the other there is indeed, after 1868, only the demand for rent, the credit of the rent by Jenk-

inson from year to year was evidently in pursuance of an agreement between him and Down that the rent should be offset against Jenkinson's claims against Down, and Down appears to have acquiesced in such credit. The crediting of it, therefore, must be regarded as an annual payment on account, to be applied if, and so far as necessary, to the payment of Jenkinson's demands. Here were mutual accounts, mutual credits founded on subsisting debts on the other side, and an implied agreement, at least, for a set-off of such mutual debts.